1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                   **EASTERN DISTRICT OF CALIFORNIA**

9

10

11    EUGENIA KATHERINE MCGOVRAN,        )   Case No.: 1:19-cv-01383-BAM
                                         )
12              Plaintiff,               )   **ORDER REGARDING SOCIAL SECURITY**
                                         )   **COMPLAINT**
13         v.                            )
                                         )
14    ANDREW M. SAUL, Commissioner of Social )
      Security,                          )
15                                       )
                                         )
16              Defendant.               )
                                         )
17

18                           **<u>INTRODUCTION</u>**

19         Plaintiff Eugenia Katherine Mcgovran ("Plaintiff") seeks judicial review of a final decision of

20   the Commissioner of Social Security ("Commissioner") denying her application for disability

21   insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court

22   on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

23   McAuliffe.[1]

24         Having considered the briefing and record in this matter, the Court finds the decision of the

25   Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

26

27   ───────────────

28   [1]      The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
     entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 5, 7, 18.)

                                            1

and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on May 23, 2016.  AR 158-63.[2] Plaintiff alleged that she became disabled on October 23, 2015, due to severe arthritis of the neck, stenosis of the cervical spine C4-C7, numbness and burning in both hands, osteoarthritis of right thumb, pain with grasping, severe neck and shoulder pain, debilitating headaches, fibromyalgia, osteoporosis, and depression.  AR 165, 178-79.  Plaintiff's application was denied initially and on reconsideration.  AR 85-88, 92-97.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Timothy Snelling held a hearing on June 13, 2018.  AR 29-61.  ALJ Snelling issued an order denying benefits on October 28, 2018.  AR 10-24.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on June 13, 2018, in Fresno, California.  Plaintiff appeared at the hearing by telephone.  She was represented by attorney Jeff Milam.  Cheryl R. Chandler, an impartial vocational expert, also appeared and testified.  AR 15, 31-32.

Plaintiff confirmed that her impairments included degenerative disc disease, stenosis of the cervical spine, osteoarthritis of both hands, a history of migraine headaches, fibromyalgia syndrome, osteoporosis, depression, polymyalgia and chronic obstructive pulmonary disease.  She was 63 years old and was previously employed in various jobs as a bartender, auction clerk and sales associate/clerk.  AR 35-37.  The VE classified Plaintiff's past work as sales person jewelry, sales clerk and bartender.  AR 39.

In response to questions from her attorney, Plaintiff testified that she has problems being on her feet for long periods of time.  The most she can be up and about at one time is approximately one hour.  In an eight-hour day, she probably sits for four hours and is on her feet for four hours.  The most

---

[2]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

she can lift and carry is 15 pounds.  She has problems with her hands.  The longest she can use her hands is 15 minutes before she has to stop and rest for about 15 minutes.  It gets harder to use her hands throughout the day.  She has arthritis.  She also testified that she has neck pain, which causes her to have problems turning her neck.  She has problems staring at a TV for a long period of time.  She uses ibuprofen and a neck pillow to relieve her neck pain.  She also has low back pain.  She does not use ice or rubs for her back pain.  She has not had any shots for the low back or neck.  She takes Gabapentin and ibuprofen.  AR 40-45.

Plaintiff testified that she has lung problems and is a former smoker.  She has shortness of breath with activity.  If she is doing things around the house, it gets worse.  She also has swelling around the ankles, which causes pain when swollen and worsens if she is on her feet.  She does not take medication for it.  She has to stay off of her feet because of the swelling three times a week, sitting down for 15-20 minutes and elevating her feet.  She cannot sit for long periods, having to change positions every 15-20 minutes.  She does not use a cane.  AR 46-50.

In response to questions from the ALJ, Plaintiff testified that she has brittle bones with her osteoporosis.  She fractured her left wrist when she fell.  She receives infusions to help with her osteoporosis.  AR 51-53.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The ALJ asked the VE hypotheticals.  For the first hypothetical, the ALJ asked the VE to assume an individual restricted to light work, lift and carry 20-10, stand and walk 6 of 8, and sit 6 of 8.  The individual could not climb ladders, ropes or scaffolding, but all other postural activities could be performed on an occasional basis, including climbing of ramps and stairs, crouching, crawling, kneeling and stooping.  The individual also must avoid concentrated exposure to pulmonary irritants, temperature extremes, dampness, vibration, very loud noise and very bright lights.  The VE testified that this individual would be able to perform all three of Plaintiff's past jobs.  AR 54.

For the second hypothetical, the ALJ asked the VE to assume everything in hypothetical one and that the individual could have no more than frequent overhead, reach, overhead push and pull, gross manipulation and fine manipulation with the bilateral upper extremities.  The VE testified that such an individual would be able to perform Plaintiff's past work.  AR 55.

For the third hypothetical, the ALJ asked the VE to assume everything in hypothetical one and that the individual could perform no more than occasional gross manipulation and fine manipulation with the bilateral upper extremities.  The VE testified that such an individual would not be able to perform Plaintiff's past work.  AR 55.  Based on Plaintiff's age and education and hypothetical number three, the VE confirmed that Plaintiff did not have any transferable job skills to light work.  AR 56.

In response to questions from Plaintiff's attorney, the VE testified that her source for jobs is the DOT and SkillTran.  AR 56.  The VE also testified that if a person had to change positions every 15 to 20 minutes from sitting to standing, Plaintiff's past work would not be available.  The VE indicated that Plaintiff's past jobs did not allow for a sit/stand option.  AR 56-58.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-24.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 13, 2015, the alleged onset date.  AR 17.  The ALJ identified degenerative disc disease, stenosis of the cervical spine, osteoarthritis of bilateral hands, mild headaches, fibromyalgia syndrome, osteoporosis, polymyalgia, chronic obstructive pulmonary disorder, emphysema, edema, hypermobility syndrome and depression as severe impairments.  AR 17-18.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work.  She could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with normal breaks.  She could frequently reach overhead, push, and pull overhead with bilateral upper extremities.  She could not climb ladders, ropes, and scaffolds, but occasionally could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She also must

4

avoid concentrated exposure to extreme cold and heat, wetness, humidity, very loud noise, very bright lights, vibration and pulmonary irritants.  AR 20-23.  With this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a sales person jewelry, sales clerk and bartender.  AR 23-24.  The ALJ therefore concluded that Plaintiff had not been under a disability from October 13, 2015, through the date of the decision.  AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

1    burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

2    1990).

3                                        **DISCUSSION**[3]

4            Plaintiff contends that the ALJ erred by rejecting the opinion of her treating physician, Dr.

5    Boniske, and the opinions of the state agency physicians do not constitute substantial evidence

6    sufficient to reject that opinion.  Plaintiff also contends that the ALJ failed to give legally adequate

7    reasons for rejecting her subjective complaints.

8            **1.  Treating Physician Opinion**

9            On May 14, 2018, Dr. Charles Boniske (and Colleen Gleason, FNP) completed a

10   Questionnaire – Fibromyalgia (W/Emphasis on Hands) form.  Dr. Boniske felt that Plaintiff's medical

11   problems precluded her from performing any full-time work at any exertion level.  Plaintiff's primary

12   impairment was chronic pain.  She was able to stand/walk for short periods of time during an 8-hour

13   workday with frequent rest due to pain.  She also had pain in both hands, decreased grip, peripheral

14   neuropathy complaints in both hands and cervical stenosis at C5/C6 bilaterally.  Dr. Boniske indicated

15   that Plaintiff dropped items frequently, but she could lift 10-15 pounds with pain.  She could reach,

16   handle, feel, push/pull and grasp 20-25% of the day with significant pain.  She was unable

17   repetitiously perform these tasks.  Dr. Boniske noted that several attempts to return to the work force

18   had failed.  AR 344-45.

19           Dr. Boniske (and Nurse Practitioner Gleason) also prepared a letter, which stated as follows:

20           [Plaintiff] is an established patient in this office since June 2010.  Initially she was given a
21           DX of Polymyalgia rheumatica, eventually fibromyalgia.  At the time of the fibromyalgia
             Dx she also complained of multiple joint, neck and back pain. . . . In 2012 radiology studies
22           were obtained confirming severe cervical disc disease.  The patient does suffer from
             fibromyalgia, but her primary complaints stem from osteoarthritis, cervical disc disease
23           with stenosis and degenerative disc disease of the lumbar spine.  She complains of pain in
             the neck with radiculopathy into both arms and pain in both feet.  She suffers from
24           decreased grip strength from osteoarthritis of bilateral CMC joints.

25

26

27   ――――――――――――――――――――
     [3]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments,
     points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to
28   be construed that the Court did not consider the argument or brief.

The cervical spine x-ray in 2012 confirmed severe cervical disc disease, with neural foraminal narrowing. MRI in May of 2012 showed neural foraminal narrowing and central canal stenosis at several levels. In 2016 X-ray of the lumbar spine confirmed possible central annular tear at L5 and S1. X-rays of both hands confirmed severe osteoarthritis at both CMC joints. R>L.

The paper work for Social Security disability was requested on the diagnosis of fibromyalgia. The work disability issues are primarily related to the osteoarthritis of the hands and spine.

She made several attempts to return to the workforce and failed. She is in persistent pain, the pain is exacerbated with lifting her arms and grasping. The grip strength is weak secondary to the osteoarthritis. The pain in the shoulder girdle is most likely secondary to cervical stenosis.

AR 343.

Plaintiff argues that the ALJ erred by rejecting Dr. Boniske's opinion that Plaintiff was unable to work full-time at any exertional level. (Doc. 15 at 12-15.) Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this instance, Dr. Boniske's treating opinion was contradicted by the opinions of the state agency medical consultants, Drs. Michal Douglas and E. Wong. Drs. Douglas and Wong both opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or

1   walk about 6 hours in 8-hour workday, could sit about 6 hours in an 8-hour workday, could

2   occasionally climb ladders, ropes  and scaffolds, could occasionally crawl, could climb ramps/stairs,

3   balance, stoop, kneel and crouch without limitation, could frequently reach overhead on her right and

4   could frequently handle/finger on her right.  AR 68-69, 79-81.  In light of these opinions, the ALJ was

5   required to provide specific and legitimate reasons supported by substantial evidence in the record to

6   discount Dr. Boniske's opinion.

7        In evaluating Dr. Boniske's opinion, the ALJ reasoned as follows:

8        Treating physician, Dr. Boniske, opined the claimant's fibromyalgia precluded her from
         performing any full-time work at any exertion level.  He also opined she could lift and
9        carry 10-15 pounds with pain, and stand, walk, and sit, but only for short periods with
         frequent rest (Exhibit 10F, p. 2).  The claimant was unable to repetitively perform reaching,
10       handling, feeling, pushing, pulling, or grasping and would need to rest between [her]
         activities (Exhibit 10F, p. 2).  The undersigned gives less weight to this opinion because it
11       is overly restrictive.  The claimant reported she was able to clean, do the laundry, cook
         (Exhibit 5E, p. 3), occasionally go out to lunch with friends, decorate, grocery shop, and
12       drive a car (Exhibit 5E, pp. 4-5).   Additionally, the claimant reported prescribed
         medications helped some (Exhibit 7F, p. 5), and she used ice, heat rub, and hot showers,
13       which also helped with the pain (Hearing Transcript).  The objective evidence corroborated
         the claimant does suffer from several impairments, including fibromyalgia (Exhibits 1F, p.
14       2; 7F, pp. 10 and 13; and 8F, p.2), but the record also demonstrated she was physically
         very capable, as detailed above.  For these reasons, the undersigned gives less weight to
15       this opinion.

16

17   AR 23.

18        Having considered the record, the Court finds that the ALJ provided specific and legitimate

19   reasons supported by substantial evidence to assign less weight to Dr. Boniske's opinion.  First, the

20   ALJ assigned Dr. Boniske's opinion less weight because it was overly restrictive in light of her

21   activities of daily living, which included the ability to clean, do laundry, cook, go out to lunch with

22   friends, decorate, grocery shop and drive.  AR 23.   "A conflict between a treating physician's opinion

23   and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."  *Ford v.*

24   *Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir

25   2001).  The ALJ's decision to discount Dr. Boniske's opinion as inconsistent with Plaintiff's activity

26   level is supported by substantial evidence.  Dr. Boniske opined that Plaintiff could only stand, walk

27   and sit for short periods and could not repetitively reach, handle, feel, push, pull, or grasp.  However,

28   in contrast with Dr. Boniske's opinion, in the Function Report – Adult relied upon by the ALJ (Exhibit

5E), Plaintiff reported that during the day she did normal household duties, including cooking, cleaning and laundry "all day and every day mostly."  AR 202.   She also went outside daily, and was able to walk, drive a car and ride in car.  She shopped for groceries every couple of weeks for "maybe an hour to two hours."  AR 203.  She also engaged in decorating and taking care of her home.  AR 204.  She occasionally went to lunch or friends would come to her home or talk on the phone.  AR 204.  Additionally, she occasionally babysat her great grandchildren with her husband.  AR 201.

Second, the ALJ discounted Dr. Boniske's opinion because Plaintiff received some relief from her symptoms with medication.  AR 23.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Sehovic v. Saul*, No. EDCV 19-00953-AS, 2020 WL 3511572, at *6 (C.D. Cal. June 29, 2020) (finding ALJ provided clear and convincing, specific and legitimate reason for assigning little weight to physician's opinion where claimant's pain symptoms and fibromyalgia were adequately managed with medication).  The ALJ's decision to discount Dr. Boniske's opinion because she received some relief with medications is supported by substantial evidence.[4]  As noted by the ALJ, in July 2017, Plaintiff reported that her "medications help."  AR 289.  The corresponding treatment record indicted that gabapentin "continues to help with the radiculopathy component" and ibuprofen "helps" with Plaintiff's cervical disc disease with chronic pain.  AR 290.  Treatment records also reflect "some relief" with gabapentin (AR 291), "[s]ome improvement with gabapentin and ibuprofen" (AR 291), "gabapentin does help with the radiculopathy component" of fibromyalgia (AR 292), and "[i]buprofen does seem to help" with her cervical disc degeneration (AR 292).  In addition, treatment records reflected some relief with cervical epidural injections.  AR 249, 267 ("CESI helped very well").

---

[4]      As Plaintiff argues, the ALJ incorrectly found that Plaintiff's use of ice, heat rub, and hot showers helped with the pain.  AR 23.  Plaintiff indicated only that she used heat, hot showers and hot baths for her lower back pain.  AR 45.  However, any such error is harmless as the ALJ provided other specific and legitimate reasons supported by substantial evidence for discounting Dr. Boniske's opinion. "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Third, the ALJ discounted Dr. Boniske's opinion regarding Plaintiff's physical limitations based on objective medical evidence demonstrating that she was physically very capable.  AR 23. An ALJ may properly reject a treating physician's opinion that is unsupported by clinical findings. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ need not accept the opinion of any physician, including a treating physician, if that opinion, is brief, conclusory, and inadequately supported by clinical findings"). Here, Dr. Boniske opined that Plaintiff's work disability issues were "primarily related to the osteoarthritis of the hands and spine."  AR 343.  With respect to Plaintiff's hands in particular, the ALJ noted that upon physical examination by her treating physician, Plaintiff presented with 5/5 strength for biceps, triceps, and handgrip, and no atrophy was noted, and that she continued to present with good grip strength.  AR 22, 260, 264, 275, 295.  The treatment notes, including certain of Dr. Boniske's notes cited by the ALJ, demonstrated that Plaintiff frequently presented with normal grip strength (AR 244, 260, 275, 285, 289, 295, 297) and normal muscle strength in her upper extremities (AR 251, 262, 264. 267, 269, 273, 302, 304, 306, 307).[5]  With respect to her spine, an MRI in October 2015 showed mild cervical spondylosis and central spinal canal stenoses that did not compress the spinal cord or cause myelomalacis, with the ALJ  (noting no nerve impingement or cord compression (AR 21, 253-54, 260; 274), and an MRI of the lumbar spine in October 2016 showed a possible central annular tear or cleft at L5-S1 and no neural foraminal narrowing or definite nerve root impingement (AR 21, 283).

As a final matter, Plaintiff argues that the opinions of the non-examining physicians are not substantial evidence sufficient to reject the opinion of her treating physician.  However, the opinions of non-examining physicians may serve as substantial evidence when their opinions "are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are

---

[5]     She also presented with a normal gait (AR 251, 260, 262, 264, 267, 269, 274, 285, 289, 292, 299, 302, 304, 306, 307).

supported by other evidence in the record and are consistent with it"); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) (finding the report of a non-examining, non-treating physician need not be discounted when it "is not contradicted by *all other evidence* in the record") (emphasis in original). As discussed, the state agency medical consultants, Drs. Douglas and Wood, both opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in 8-hour workday, could sit about 6 hours in an 8-hour workday, could occasionally climb ladders, ropes  and scaffolds, could occasionally crawl, could climb ramps/stairs, balance, stoop, kneel and crouch without limitation, could frequently reach overhead on her right and could frequently handle/finger on her right.  AR 68-69, 79-81.  The ALJ assigned "some weight" to these opinions because they were generally consistent with and supported by the record but added additional pulmonary restrictions to account for Plaintiff's diagnoses of COPD and emphysema.  AR 23.  In so doing, the ALJ considered Plaintiff's testimony that she could lift and carry 15 pounds and she was capable of cleaning, doing the laundry and cooking.  AR 23, 41, 202-03.  The ALJ also considered objective evidence in the treatment records indicating that Plaintiff presented with good grip strength despite allegations that she dropped things.  AR 23, 244, 260, 275, 285, 289, 295, 297.  Thus, the ALJ did not err by affording some weight to the opinions of the non-examining state agency consultants where supported by evidence in the record.

### B. Subjective Complaints

Plaintiff contends that the ALJ failed to give legally adequate reasons for rejecting her testimony.  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity,

1    persistence and limiting effects of those symptoms.  AR 21-22.  The ALJ was therefore required to

2    provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

3           Plaintiff argues that the ALJ erred in evaluating her testimony by failing to meet the specificity

4    requirements explained in *Brown–Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). (Doc. No. 15 at 18-

5    19.)  In *Brown–Hunter*, the Ninth Circuit reiterated its holding that an ALJ errs "by making only a

6    single general statement that the claimant's statements concerning the intensity, persistence and

7    limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

8    residual functional capacity assessment, without identifying sufficiently specific reasons for rejecting

9    the testimony, supported by evidence in the case record." 806 F.3d at 493 (citation and quotation

10   marks omitted).  There, the ALJ "stated only that she found, based on unspecified claimant testimony

11   and a summary of medical evidence, that 'the functional limitations from the claimant's impairments

12   were less serious than she has alleged.'" *Id*. The Ninth Circuit found the ALJ's analysis erroneous and

13   concluded that any such error was not harmless as it could not "discern the agency's path because the

14   ALJ made only a general credibility finding without providing any reviewable reasons why she found

15   [the claimant's] testimony to be not credible." *Id.* at 494.  The failure to identify which testimony the

16   ALJ found not credible and which evidence contradicted that testimony fell short of meeting the ALJ's

17   responsibility to provide the reason or reasons upon which her adverse determination was based.  *Id.* at

18   494-95 (citation omitted).

19          The Court finds this case distinguishable from *Brown–Hunter*.  Here, the ALJ summarized

20   portions of Plaintiff's subjective testimony regarding the persistence, intensity, frequency, and limiting

21   effects of her pain.  AR 20-21. Specifically, the ALJ summarized Plaintiff's subjective allegations that

22   her ability to work was limited by difficulty standing, sitting, and walking and she experienced

23   headaches and pain in her neck, shoulders, back, hips, knees, ankles, elbows, and right hand.  AR 20,

24   200, 201, 205.  The ALJ also considered Plaintiff's assertion that she could walk a city block before

25   needing to rest.  AR 20, 205. Additionally, the ALJ considered Plaintiff's hearing testimony that she

26   could stand for up to an hour, could lift and carry 15 pounds, and experienced bilateral hand pain.  AR

27   21, 40-42.  The ALJ expressly identified that he discounted Plaintiff's hearing testimony that she

28   occasionally dropped things because the record indicated she presented with good grip strength.  AR

23 ("The record indicated she presented with good grip strength (Exhibits 4F, p. 1 and 7F, p. 11),

despite her allegations that she occasionally dropped things (Hearing Transcript)."). *Brown–Hunter*

also is distinguishable because, as discussed below, the Court is able to "reasonably discern" the

ALJ's path. *See*, *e.g.*, *Green v. Saul*, No. 1:19-cv-00058-BAM, 2020 WL 1227895, at *10 (E.D. Cal.

Mar. 13, 2020), (distinguishing *Brown-Hunter* and noting that while the ALJ's opinion could have

been more clearly stated, the court was able to reasonably discern the ALJ's path for the purpose of

review), report and recommendation adopted, No. 1:19-cv-00058-NONE-BAM, 2020 WL 3496998

(E.D. Cal. June 29, 2020); *Hoefer v. Berryhill*, No. 1:17-cv-01695-BAM, 2019 WL 1283932, at *5, n.

5 (E.D Cal. Mar. 20, 2019) (same).

   The Court finds that the ALJ provided specific, clear and convincing reasons for discounting

Plaintiff's subjective complaints.  First, the ALJ considered that Plaintiff's statements were not

entirely consistent with the medical record.  AR 21-22.  Although lack of supporting medical evidence

cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See*

*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  As mentioned, the ALJ found that the record

"indicated she presented with good grip strength …, despite her allegations that she occasionally

dropped things (Hearing Transcript)."  AR 23.  The ALJ observed in the decision that "[u]pon physical

examination [by her treating physician] she presented with 5/5 strength for biceps, triceps, and

handgrip, and no atrophy was noted . . . .  The record indicated she continued to present with good grip

strength."  AR 22, 260, 264, 275, 295.  Treatment notes generally demonstrated that Plaintiff

presented with normal grip strength (AR 244, 260, 275, 285, 289, 295, 297) and normal muscle

strength in her upper extremities (AR 251, 262, 264. 267, 269, 273, 302, 304, 306, 307).

   Second, the ALJ considered that "[t]he objective evidence corroborated that the claimant does

suffer from several impairments, including fibromyalgia . . ., but the record also demonstrated she was

physically very capable, as detailed above."  AR 23.   In his decision, the ALJ detailed Plaintiff's

ability to engage in a variety of activities of daily living, including the ability to clean, do laundry,

cook, go out to lunch with friends, decorate, grocery shop and drive.  AR 23.  Engaging in daily

activities that are incompatible with the severity of symptoms alleged can support an ALJ's

determination to discount a claimant's subjective testimony. *Trevizo*, 871 F.3d at 682; *Burrell v.*

13

*Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between a claimant's testimony and the claimant's reported activities).  Plaintiff contends that her ability to engage in activities was not a reason given by the ALJ for rejecting her testimony.  (Doc. 17 at 6.)   Although the ALJ's statement concerning Plaintiff's physical capabilities was made in connection with his evaluation of Dr. Boniske's opinion (AR 23), it is evident that he was considering Plaintiff's medically determinable impairments but discounting the intensity and limiting effects of her alleged symptoms related to those impairments based on her activities.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Eugenia Katherine Mcgovran.


IT IS SO ORDERED.

Dated:   **March 24, 2021**                    /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE

14